*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

NATHANEAL CHRISTOPHER MANN,

      Defendant-Appellant.

FOR PUBLICATION
July 23, 2026
1:57 PM

No. 377087
Jackson Circuit Court
LC No. 2022-000751-FH

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

CAMERON, P.J.

This case requires us to interpret and apply MCL 750.235b(2), the Michigan statute that criminalizes certain threats against students and school employees. In the trial court, defendant moved to dismiss his criminal charge under this statute based on several grounds, including that his statements were not "true threats" and therefore protected speech under the First Amendment. We granted leave[1] to review the circuit court's order denying defendant's motion to quash.[2] Because we discern no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from statements defendant made at his friend's house in May 2022. Defendant, then a high school senior, was banned from school property and forced to continue his schooling remotely after a domestic violence incident with his then-girlfriend that occurred on

---

[1] *People v Mann*, unpublished order of the Court of Appeals, entered December 12, 2025 (Docket No. 377087).

[2] Although defendant labeled his filing as a motion to dismiss, the substance of the motion shows that it was, in fact, a motion to quash. We are not bound by a party's characterization of a pleading and instead look to its substance. See, e.g., *Nugent v Spectrum Juvenile Justice Servs*, ___ Mich App ___, ___ n 9; ___ NW3d ___ (2026) (Docket No. 363750); slip op at 11 n 9. Accordingly, we treat defendant's motion as a motion to quash.

school property. The father of defendant's friend (the witness) overheard defendant say that if the school did not let him walk down the aisle for graduation, he "was going to go in and shoot the principal and the teachers." He also heard defendant talk about killing the school's liaison officer. The witness notified the school about two weeks later, which then relayed the allegations to the school's liaison officer. The liaison officer's investigation revealed that defendant had purchased a shotgun and attempted to purchase two pistols sometime after being banned from school property and prior to his arrest. Defendant was arrested and charged with intentionally threatening to use a firearm to commit an act of violence against a school employee on school grounds, MCL 750.235b.[3]

The witness testified at defendant's preliminary examination about the statements he heard defendant make. According to the witness, he understood defendant's statements to mean that defendant "was going to kill them[.]" Although he acknowledged that he did not report the statements immediately, he explained that he had never done something like that before and was a "nervous wreck about it." He ultimately decided to report the statements to authorities because he believed defendant "was more serious about it than any other stuff he ever talks about[,]" and that defendant "seemed really sincere about what he was saying." The district court bound defendant over to circuit court. Defendant then moved the circuit court to quash the criminal charge, arguing that he should not have been bound over for trial. The circuit court denied the motion, and defendant now appeals.

## II. STANDARDS OF REVIEW

"We review a district court's bindover decision for an abuse of discretion." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). "An abuse of discretion occurs when the district court's decision falls outside the range of principled outcomes." *Id.* (quotation marks and citations omitted). "We must review the evidence in the light most favorable to the prosecution[.]" *Id.* at 650. We review constitutional issues and questions of statutory interpretation de novo. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). "When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature." *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "We begin by construing the language of the statute itself. Where the language is unambiguous, we give the words their plain meaning and apply the statute as written." *Id.*

## III. ANALYSIS

Defendant argues that there was insufficient evidence to justify his bindover to circuit court. We disagree.

Defendant was charged under MCL 750.235b(2). The relevant portions of the statute provide:

---

[3] Defendant was also charged with threatening to commit an act of terrorism, MCL 750.543m. This charge was ultimately dismissed, and the parties do not raise any arguments about it on appeal.

(1) A person who verbally, through the use of an electronic device or system, or through other means intentionally threatens to use a firearm, explosive, or other dangerous weapon to commit an act of violence against any students or school employees on school grounds or school property if the threat can be reasonably interpreted to be harmful or adverse to human life, or dangerous to human life as that term is defined in section 543b, is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

(2) A person who violates subsection (1) and who in the course of violating subsection (1) had the specific intent to carry out the threat, or had undertaken an overt act toward carrying out the threat, is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both. [MCL 750.235b(1) and (2).]

When a statute criminalizes pure speech, it "must be interpreted with the commands of the First Amendment clearly in mind." *Watts v United States*, 394 US 705, 707; 89 S Ct 1399; 22 L Ed 2d 664 (1969). "True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v Colorado*, 600 US 66, 72; 143 S Ct 2106; 216 L Ed 2d 775 (2023). "[S]tatutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Skinner*, 502 Mich 89, 110; 917 NW2d 292 (2018) (quotation marks and citation omitted). Accordingly, we must interpret MCL 750.235b as prohibiting "true threats" so as not to run afoul of the First Amendment. *Id*.; see also *People v Johnson*, 340 Mich App 531, 544; 986 NW2d 672 (2022) ("[A] penal statute that proscribes a person from making a 'threat' must be interpreted as prohibiting 'true threats' in order to pass constitutional muster[.]").

Under the First Amendment, true threats "encompass those statements where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals[.]" *Johnson*, 340 Mich App at 544 (quotation marks and citations omitted). A statement can qualify as a true threat "based solely on its objective content." *Counterman*, 600 US at 72. The United States Supreme Court has held that, under federal law, the issue of "[w]hether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat[.]" *Id*. at 74. "[A] prohibition on true threats protects individuals from the fear of violence and the disruption that fear engenders, as well as from the possibility that the threatened violence will occur." *Virginia v Black*, 538 US 343, 344; 123 S Ct 1536; 155 L Ed 2d 535 (2003). Thus, as a matter of federal law, "[t]he existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Counterman*, 600 US at 74 (quotation marks and citation omitted). Stated differently, "a 'true threat' does not turn on whether the speaker intends to carry out the threat, but on whether the speaker intends to communicate the threat." *People v Gerhard*, 337 Mich App 680, 690; 976 NW2d 907 (2021).

The United States Supreme Court has held that, for First Amendment purposes, recklessness is a sufficient mens rea to remove a true threat from constitutional protection.

*Counterman*, 600 US at 73, 82. But our Legislature, like a few others,[4] has enacted a school threat statute that imposes a more demanding mens rea requirement for threats against students and school employees. MCL 750.235b(2) requires the prosecution to prove that a defendant "intentionally threaten[ed]" to engage in the proscribed act, MCL 750.235b(1), and had "the specific intent to carry out the threat, or had undertaken an overt act toward carrying out the threat," MCL 750.235b(2). Accordingly, to obtain a conviction under MCL 750.235b(2), the prosecution must prove that the defendant: (1) intentionally threatened (2) to use a prohibited weapon (3) to commit an act of violence (4) against a student or school employee (5) on school grounds or property, (6) the threat can be reasonably interpreted to be harmful or adverse to human life, or dangerous to human life as defined under MCL 750.543b, and (7) the defendant had the specific intent to carry out the threat or took an overt act toward carrying out the threat.

At the preliminary-examination stage, the prosecution is not required to prove every element of the charged offense beyond a reasonable doubt. Rather, it need only establish probable cause to believe that the charged offense was committed and that the defendant committed it. See *People v Crumbley*, 346 Mich App 144, 167; 11 NW3d 576 (2023). "In a preliminary examination, a district court's function is to determine whether the evidence is sufficient to cause an individual marked by discreetness and caution to have a reasonable belief that the defendant is guilty as charged." *Gerhard*, 337 Mich App at 689 (quotation marks and citation omitted). "Importantly, the inquiry is not into actual guilt or innocence, and the requisite quantum of proof is far less than beyond a reasonable doubt." *Id*. at 689-690 (quotation marks and citation omitted). Thus, "reasonable doubts or conflicts in the evidence must be reserved to the trier of fact." *Id*. at 690. "The only requirement is that there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. . . ." *Id*. (quotation marks, brackets, and citation omitted).

Defendant's arguments on appeal relate to the first, sixth, and seventh elements. He claims that there was insufficient evidence to support his bindover because (1) his statements were not a serious expression of an intent to carry out the threat, he was simply "venting to a friend[,]" (2) he did not communicate any of the threatening statements to any school employees and did not intend for employees to hear about them, and (3) because his statements were not conveyed to the alleged targets, the statements did not constitute threats.

Defendant's first argument depends on this Court accepting his own characterization of his statements over the characterization offered by the witness. Defendant claims to be "a known blowhard" who frequently made inappropriate remarks without intending to act on them. But the witness testified that defendant "was more serious about [the threat in this case] than any other stuff he talks about" and "seemed real sincere about what he was saying." Viewed in the light most favorable to the prosecution, this evidence was sufficient to establish probable cause that defendant possessed the requisite intent to commit the charged offense. *Crumbley*, 346 Mich App

---

[4] In response to the rise in school shootings, several states have enacted or amended school-threat statutes. Michigan is one of these states and has adopted a mens rea standard more demanding than the federal recklessness standard. See, e.g., MCL 750.235(b); Idaho Code § 18-3302i (2018); NY Penal Law § 240.78 (McKinney 2022); Utah Code Ann § 76-5-107.1 (2025).

at 167; *Fairey*, 325 Mich App at 650. Although defendant's actual intent remains a question for the trier of fact, the district court's decision that the prosecution met its burden of proof at the preliminary examination fell well within the range of reasonable outcomes. *Fairey*, 325 Mich App at 649.

We are likewise unpersuaded by defendant's argument that he did not make a true threat because the witness waited two weeks before reporting it. For purposes of defendant's criminal intent, the listener's delay in reporting a true threat of a school shooting to authorities is of little significance because, in Michigan, the threat is completed when the speaker intentionally communicates the threat to the listener.[5] Thus, the witness's delay in reporting the threat is irrelevant to the controlling question of whether defendant intentionally made the threat, and disputes concerning defendant's mental state "must be reserved to the trier of fact." *Gerhard*, 337 Mich App at 690.

Finally, defendant argues that the prosecution failed to establish the seventh element (specific intent) because there was no evidence that he specifically intended to carry out the threatened shooting. But the prosecution presented evidence that defendant bought a shotgun and attempted to buy two pistols between the time when he was banned from school grounds and the time of his arrest. These affirmative steps toward acquiring firearms were sufficient, at the preliminary-examination stage, to support a reasonable inference that defendant possessed the requisite specific intent. See *id*.

Defendant's remaining arguments rest on the premise that a true threat requires the intended target to be aware of the threat. According to defendant, a statement cannot qualify as a true threat unless it actually intimidates, frightens, or causes apprehension in the target, which can only occur if the threat is communicated directly to the target or to a third party whom the defendant knows will relay it to the target. Although defendant cites cases from other jurisdictions,[6] he identifies no binding Michigan authority imposing such a requirement. To be sure, a threat must be communicated to *someone* in order to determine whether it "can be reasonably interpreted to be harmful or adverse to human life," but nothing in the statutory language requires that the threat be directly communicated to its intended target. Defendant's proposed interpretation would add a requirement that the Legislature did not include, and this Court may not read additional language into the statute. *People v Haynes*, 281 Mich App 27, 29; 760 NW2d 283 (2008).

---

[5] Moreover, defendant's claim that the threat was not serious because of the delay is belied by the witness's explanation that he waited because he was "a nervous wreck about it."

[6] Decisions from other states are not binding precedent but may be considered for their persuasive value. *People v Baham*, 321 Mich App 228, 240 n 2; 909 NW2d 836 (2017).

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle